UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:19CV1998 |
| | : | |
| $126,360.00 IN UNITED STATES | : | |
| CURRENCY, | : | |
| | : | |
| Defendant. | : | December 20, 2019 |
| | : | |
| [CLAIMANT: ERIC DIAZ] | : | |

VERIFIED COMPLAINT OF FORFEITURE

The plaintiff, United States of America, by and through its attorneys, John H. Durham,

United States Attorney for the District of Connecticut, and Julie G. Turbert, Assistant United

States Attorney, brings this complaint and alleges as follows in accordance with Rule G(2) of the

Supplemental Rules for Admiralty Maritime and Forfeiture Claims:

NATURE OF THE ACTION

1.     This is a civil action to forfeit and condemn to the use and benefit of the United

States of America the following property: $126,360.00 in United States currency (Defendant

Currency), for violation of 18 U.S.C. § 981(a)(1)(A) or 21 U.S.C. §881(a)(6).

THE DEFENDANT IN REM

2.     The defendant consists of the following: $126,360.00 in United States currency. The

$126,360.00 was seized from Eric Diaz at Bradley International Airport in Windsor Locks,

Connecticut on June 11, 2019. The Defendant Currency is presently in the custody of Homeland

Security Investigations.

3.       On September 23, 2019, Eric Diaz ("Claimant") submitted an administrative claim of ownership to the Defendant Currency, which U.S. Customs and Border Protection received the same day.

## JURISDICTION AND VENUE

4.       Plaintiff brings this civil action *in rem* in its own right to forfeit and condemn the Defendant Currency. This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. §1345, and over an action for forfeiture pursuant to 28 U.S.C. §1355(a).

5.       This Court has *in rem* jurisdiction over the Defendant Currency pursuant to 28 U.S.C. §1355(b). Upon the filing of this verified complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the Defendant Currency pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

6.       Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395, because the property is located in this district.

## BASIS FOR FORFEITURE

7.       The Defendant Currency is subject to forfeiture pursuant 18 U.S.C. § 981(a)(1)(A) for the forfeiture of property involved in a financial transaction or attempted financial transaction in violation of 18 U.S.C. § 1956, or pursuant to 21 U.S.C. § 881(a)(6) because it constitutes (1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq.; (2) proceeds traceable to such an exchange; or (3) money, negotiable

2

instruments, and securities used or intended to be used to facilitate any violation of the

Controlled Substances Act, 21 U.S.C. §§ 801 et seq.

<u>SEIZURE OF $126,360.00 IN UNITED STATES CURRENCY</u>

8.      On June 11, 2019, at approximately 9:00 p.m., Transportation Security

Administration (TSA) agents discovered a large amount of United States currency secured in

manila envelopes and wrapped in white paper in the carry-on luggage of Eric Diaz, as he went

through pre-flight security at Bradley International Airport in Windsor Locks, Connecticut.

9.      TSA agents notified Homeland Security Investigation (HSI) and agents from HSI

arrived at Bradley International Airport at 10:00 p.m. to investigate. The Connecticut State

Police officers on scene identified Eric Diaz as the owner of two carry-on bags that contained

unidentified bulk masses. They notified the HSI agents that Diaz had a boarding pass for JetBlue

Airlines to San Juan, Puerto Rico. The flight was scheduled to board at 8:57 p.m. and depart at

9:32 p.m.

10.     The Lead Transportation Security Officer (TSO) told HSI agents that one of the

TSO's noticed unidentified bulk masses within Diaz's two carry-on bags. The TSOs inspected

Diaz's two carry-on bags to determine if the unidentified bulk masses posed a threat to the

passengers or the aircraft. The inspection revealed that the bulk masses consisted of eight

bundles of cash wrapped in white paper and packaged in manila envelopes. Four bundles were

discovered in each of Diaz's two carry-on bags. At this time Diaz was not in custody and was

waiting to speak to investigators in a public area adjacent to the TSA screening area.

11.     Diaz voluntarily spoke to the agents about the large amount of cash that had been

found in his carry-on bags. Diaz told the agents that the cash in his carry-on bags was given to

him by his father, Herminio Diaz, earlier that day and that the cash was for the purchase of a house in Puerto Rico. Diaz resides with his father at 78 Prospect Street, Springfield, Massachusetts. Diaz said that his bags contained $120,000 in one hundred dollar bills and that it was from his father's ownership of Piti's Market located at 2489 Main Street, Springfield, Massachusetts. Agents attempted to obtain Herminio Diaz's contact information to verify that the $120,000 cash belonged to him, but Diaz said that his father did not have a cell phone.

12.     Based on the agents training and experience, drug trafficking organizations often employ couriers to transport large amounts of currency to areas known to supply narcotics. Puerto Rico is an area that is known to supply narcotics to the United States. Large amounts of currency are often secreted or concealed in an attempt to avoid detection by TSA or law enforcement. The currency found in Diaz's bag was consistent with an attempt to avoid detection by placing layers of paper around the bundles and disbursing the bundles among bags, reducing the amount and size of the currency in the bag.

13.     In addition to the $120,000.00 concealed in Diaz's carry-on bags, the agents also found $5,700.00 in cash in Diaz's pant pocket. Diaz said that the $5,700 in his pocket was from his earnings while working at Piti's Market. The agents know based on their training and experience that couriers are often given a fee plus the cost of their travel for transporting currency or narcotics. A courier's fee is typically segregated from the larger amount that will be handed off to a recipient at the courier's destination. Here, the money found on Diaz's person, $5,700.00, was segregated from the $120,000.00, and the amount is consistent with the fee couriers are paid for such a transaction.

14.     Also, through training and experience, the agents know that couriers will often attempt to avoid detection by arriving at the screening checkpoint close to the boarding time to put pressure on TSA agents to search the luggage quickly and allow them to board. TSA recommends a two hour window for domestic travel to be screened, but here Diaz was screened with only 20 minutes to spare at approximately 8:40 p.m. for a flight that was boarding at 8:57 p.m.

15.     In addition, Diaz stated that he purchased the one-way airline ticket with cash earlier in the day and planned to stay for about four or five days. The agents noticed that Diaz did not check any baggage and that the two carry-on bags had minimal clothing for a trip of that duration. Law enforcement are aware that a courier's ticket is often a one-way ticket purchased last minute since the currency or narcotics being moved are often sent as soon as travel is arranged.

16.     The Connecticut State Police utilized a narcotics detection canine on the $120,000.00 found in Diaz's carry-on bags, and the $5,700.00 found in his pocket. The agents conducted a standard package line-up using four random identical bins from the TSA checkpoint area. The cash from Diaz's bags was placed in one of the bins and all the bins were covered to conceal the contents. The canine alerted to the bin containing the $120,000.00. The bins were placed in a different location in the line-up two more times, and each time the canine alerted to the $120,000.00. The agents conducted a separate line-up with the $5,700.00 found in Diaz's pocket. The agents put the $5,700.00 in one of four random identical bins from the TSA checkpoint area. The cash from Diaz's pocket was placed in one of the bins and all the bins were covered to conceal the contents. The canine alerted to the bin containing the $5,700.00. The bins

were placed in a different location in the line-up two more times, and each time the canine alerted to the cash.

## HERMINIO DIAZ

17.    Since Diaz told law enforcement that his father did not have a cell phone, the officers attempted to locate Herminio Diaz at Piti's Market, for which Diaz provided the address of 2489 Main Street in Springfield, Massachusetts. Law enforcement was unable to locate Piti's Market at the address Diaz provided, or any other business owned by Herminio Diaz. The address Diaz provided as Piti's Market is in fact an auto body shop, identified as Pety's Texaco, that is not owned by Herminio Diaz.

## EMPLOYMENT HISTORY OF ERIC DIAZ

18.    A search of the Commonwealth of Massachusetts Department of Labor records revealed that Eric Diaz worked at McDonalds in Westfield, Massachusetts and earned $9,460 in 2017, and $8,970.83 in 2018. In the first two quarters of 2019, Diaz has combined reported wages of $5,849.17 for McDonalds and North End Mini Market, 2469 Main Street, Springfield, Massachusetts. There were no earnings reported for the third quarter of 2019.

## CONCLUSION

19.    The Defendant Currency was seized by the Homeland Security Investigations on June 11, 2019, because it constitutes property involved in a transaction, or attempted transaction, in violation of 18 U.S.C. § 1956, or constitutes (1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 21 U.S.C. §§801 et seq.; (2) proceeds traceable to such an exchange; or (3) money, negotiable instruments, and securities used or

6

intended to be used to facilitate a violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq.

WHEREFORE, the United States of America prays that a Warrant of Arrest In Rem be issued for the Defendant, $126,360.00 in United States currency, that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY


_____*/s/ John B. Hughes*_____
JOHN B. HUGHES
ASSISTANT U.S. ATTORNEY
CHIEF, CIVIL DIVISION


_____*/s/ Julie G. Turbert*_____
JULIE G. TURBERT
ASSISTANT U.S. ATTORNEY
ATTORNEY BAR # ct23398
157 CHURCH STREET
NEW HAVEN, CT   06510
TELEPHONE: (203) 821-3700
FAX: (203) 773-5373
EMAIL: Julie.Turbert@usdoj.gov

<u>DECLARATION</u>

I am a Task Force Officer with the Homeland Security Investigations, U.S. Customs and

Border Protection, and the agent assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the

statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of December, 2019.


_____*/s/ Zachary Kashmanian*_____
ZACHARY KASHMANIAN
TASK FORCE OFFICER
HOMELAND SECURITY INVESTIGATIONS
U.S. CUSTOMS AND BORDER PROTECTION